[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-12435

Non-Argument Calendar

_____

MICHAEL D. POPE, JR.,

Plaintiff-Appellant,

*versus*

WARREN COOK,
REGINALD RAMBO,
CARL SANDERS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

D.C. Docket No. 2:21-cv-00467-LSC

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and ANDERSON, Circuit Judges.

PER CURIAM:

Michael Pope, Jr., an Alabama prisoner, appeals the summary judgment in favor of correctional officers Warren Cook and Reginald Rambo and against Pope's complaint that the officers failed to protect him in violation of the Eighth Amendment. 42 U.S.C. § 1983. Pope argues that the evidence is sufficient to permit a reasonable jury to infer that Cook and Rambo were complicit in two separate attacks against him. We affirm.

We view the evidence in the light most favorable to Pope as the nonmoving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). Pope was an inmate at a maximum-security state prison on September 16, 2020, when officers Cook and Rambo were passing meal trays to inmates in the V block, which housed "inmates with many past rule violations and potential mental health issues." The meal tray door on Pope's cell door had been "stuck" for weeks and would not open. Although Rambo could slide the tray under the cell door, he testified that he opened the door to hand the tray to Pope because sliding the tray on the ground, which often was flooded and contaminated with bodily fluids and waste, would be disrespectful. Rambo instructed the operators in the control room, or "cube," to open Pope's cell and, in the process of handing Pope

the tray, inmate DeMarkules Williams ran up behind Rambo, reached around him, and stabbed Pope in the neck and head two or three times with a homemade weapon. Rambo pushed Pope into his cell and Williams retreated to his cell, which was two cells away and had no direct line of sight to Pope's cell. Cook helped secure Williams, and Pope received treatment at the infirmary.

No one knew how Williams escaped his cell. Rambo and Pope testified that they believed that Williams opened his own cell door because he had a "trick" in it. A "trick" is a small object such as a piece of metal or plastic placed in the lock to obstruct the locking mechanism. Officers performed security checks during their shifts by pulling on each cell door to ensure the door was locked, but Lieutenant Carl Sanders and Rambo explained that some inmates could fashion a tool to pry the doors open.

Pope denied having any information to suggest that Rambo or Cook thought that Williams might attack him and denied knowing Williams. Pope believed that Rambo pushed him into his cell to stop him from being stabbed, and Pope did not think that Rambo wanted him to be stabbed by Williams.

Two months later, on November 24, another inmate, Adrian Dunning, stabbed Pope on the exercise yard. Dunning slipped out of his handcuffs, walked up behind Pope, and stabbed him in the arm, neck, and chest with a six-inch metal blade. Cook yelled and ran over to Dunning, who dropped the knife and laid on the ground. Dunning told Cook that Pope "kn[ew] why" he stabbed him and admitted to having the knife, but Dunning refused

to answer whether he had a handcuff key. Pope received stitches for his wounds at the infirmary. Rambo was not on the yard during the attack, but Pope blamed him for the attack because he believed that Rambo was responsible for retrieving Dunning from his cell and failing to search him.

Rambo and Cook testified that there was a three-step protocol for searching inmates on the way to the exercise yard. One officer would handcuff the inmate at the cell door, pat-search him, and double lock the handcuffs. A second officer would stand at the stairwell and place ankle chains on the inmate. A third officer would stand at the door leading to the yard and wave a handheld metal detector over each inmate. Sanders testified that inmates sometimes slipped out of their handcuffs by using a piece of metal to manipulate the cuffs into opening.

On the day of the second attack, Rambo was responsible for patting down inmates, and Cook was responsible for wanding over them with the metal detector. Rambo testified that the metal detector was a "hit or miss," and sometimes the officer using the metal detector might not catch hidden weapons. Rambo explained that officers would pat down "arms and legs and stuff" but that they "can't touch [an inmate's] private area" because of the Prison Rape Elimination Act, "so a lot of times [officers] can miss a knife" that inmates hide there. After the attack, Dunning wrote a statement admitting that "Rambo shook [him] down and a knife was around [his] dick."

23-12435                 Opinion of the Court                      5

Rambo and Cook testified that they knew of no animosity between Pope and Dunning. Pope testified that he did not think that Cook had anything against him, and he did not believe that Cook thought that Dunning might stab him. Pope also testified that he did not know Dunning before the attack.

The officers moved for summary judgment and argued that no reasonable jury could find that they knew that there was a substantial risk that Pope would be attacked. Pope responded that a reasonable jury could infer that Rambo and Cook were complicit in the attacks because neither attack should have been possible to carry out without their assistance. Pope argued that the attack by Williams could not have occurred without Rambo choosing to open Pope's cell door instead of sliding his meal tray under the door and without someone unlocking Williams's cell and telling him exactly when Pope's cell door, which could not be seen from Williams's cell, would open. He asserted that Rambo wrote in his post-incident statement that Williams pushed him, but during Williams's disciplinary hearing, Rambo stated that Williams reached around him, and this discrepancy, which Rambo testified was due to post-attack adrenaline, revealed that Rambo was trying to protect Williams. Pope also argued that, considering the extensive search protocol, Dunning could not have carried a knife onto the yard without Rambo and Cook helping him, and he argued that it was unusual for an inmate to admit to hiding a knife from officers after using it during an attack.

The district court granted the officers' motion for summary judgment. It ruled that Pope failed to provide enough context for his argument that the attacks were impossible without the officers' assistance and rejected his theory of complicity because it lacked evidentiary support. It explained that, in the context of a violent maximum-security prison, inferring complicity without adequate context would be too speculative and would undermine the deliberate-indifference standard.

We review a summary judgment *de novo*. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, "presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Id.*

Pope argues that a reasonable jury could infer that Rambo and Cook were complicit in the attacks, but we disagree. To prove that an officer failed to protect a prisoner from violence at the hands of other prisoners, the prisoner must prove the officer's deliberate indifference to a known, substantial risk of harm caused the inmate to suffer serious harm. *Nelson v. Tompkins*, 89 F.4th 1289, 1298 (11th Cir. 2024). Deliberate indifference has a subjective and objective component. *Id.* at 1297. The subjective component "requires that the defendant officer actually (subjectively) knew of the risk to the plaintiff inmate," and the objective component "requires evidence that the officer disregarded the known risk by failing to respond to it in an (objectively) reasonable manner." *Id.* (internal

23-12435          Opinion of the Court          7

quotation marks omitted, alterations adopted). Pope failed to establish the subjective component of this standard.

A reasonable jury could not infer that the attacks were impossible without Rambo and Cook aiding them. Starting with the Williams attack, Pope argues that it was impossible for Williams to escape his cell without help because Rambo checked the cells earlier in the day, and Williams could not have known when to run up behind Rambo without some assistance because Williams could not see Pope's cell from his own cell. But the record does not support this inference. Even Pope testified that he believed that Williams "tricked" his cell door, and Rambo and Sanders testified that some inmates make special tools to unlock their doors. And Pope offers no evidence that Rambo choosing to hand him a meal tray instead of sliding the meal tray across a possibly-contaminated floor through a small opening below the cell door was unusual. It is undisputed that Pope's meal tray slot had been inoperable for at least a few weeks. Moreover, it is undisputed that Rambo asked the operators in the "cube" to unlock Pope's cell door, and Williams's cell was only two doors away and within earshot of Rambo's instruction. The evidence does not support Pope's theory that the only way Williams could have known when to escape was to receive inside help from Rambo and Cook.

Pope makes much of the fact that Rambo's initial report stated that Williams pushed him. But Pope and Cook both testified consistently with Rambo's statement at the disciplinary hearing and during his deposition that Williams ran up behind Rambo and

reached around him to attack Pope. Moreover, Pope testified that he had no reason to believe that Rambo wanted him to be hurt.

On this record, no reasonable jury could find Rambo and Cook liable for the Dunning attack either. Rambo testified that his pat downs avoided inmates' genitals because of concerns about sexual harassment complaints. Dunning admitted that he was able to get the knife past Rambo by hiding the knife in his crotch. Pope does not argue, nor could he, that it was the mere failure to discover the knife that makes Rambo or Cook complicit in Dunning's use of it. Although Pope argues that Cook should have found the metal knife with the metal detector, no evidence established that the metal detector or its use was failproof. Rambo testified that the metal detector was sensitive, but he and Cook also explained that weapons still made it out onto the yard. And even if Cook was negligent in using the detector, that negligence, without more, fails to establish that Cook actually *knew* that Dunning was hiding a knife and would attack Pope. *See id.* And no evidence would permit a jury to infer that Rambo or Cook helped Dunning to slip out of his handcuffs on the yard instead of Dunning slipping out of his handcuffs on his own. Because the record does not support Pope's contention that the attacks could not have occurred without help from Rambo and Cook, and the evidence otherwise is insufficient to establish that either officer knew that the attacks would happen, the inferences that would be necessary in these circumstances to impose liability on the officers are unreasonable as a matter of law.

We **AFFIRM** the summary judgment in favor of the officers.