[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 24-13408

Non-Argument Calendar

_____

TIMOTHY O'NEIL,

Plaintiff-Appellee,

*versus*

VICTOR HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-04173-AT

_____

Before ROSENBAUM, JILL PRYOR, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiff Timothy O'Neil filed a 42 U.S.C. § 1983 civil-rights action against the former sheriff of Clayton County, Victor Hill, in his individual capacity, arising from O'Neil's pretrial detention at the Clayton County Jail in October 2019. O'Neil claimed that Hill violated his constitutional rights by ordering, for punitive reasons, that he be placed in a restraint chair for five hours, and then held in a suicide watch cell for weeks, where he was exposed to prolonged low temperatures without bedding, clothing, or hygiene items. The district court denied Hill's motion for summary judgment based on qualified immunity, and Hill appeals. After careful review, we affirm the denial of qualified immunity.

**I.**

In early October 2019, law enforcement officers in Nebraska obtained a warrant for O'Neil's arrest for making terroristic threats.[1] State and federal law enforcement went to execute the warrant at the home of O'Neil's sister in Georgia. O'Neil barricaded himself inside the house, firing multiple rounds, threatening

---

[1] We present the facts in the light most favorable to the O'Neil, the nonmovant in the district court, recognizing that these may or may not be the actual facts. *See Patterson v. Ga. Pacific, LLC*, 38 F.4th 1336, 1341 (11th Cir. 2022) (stating that, at summary judgment, we are required to view the evidence and all factual inferences therefrom in the light most favorable to the nonmovant, and to resolve all reasonable doubts about the facts in his favor).

to kill officers if they entered, and attempting to commit suicide by swallowing oxycodone pills. But he eventually surrendered without incident. Hill ordered that I-75 be shut down during the standoff because the house abutted the interstate.

After being taken into custody, O'Neil was transported and booked into the Clayton County Jail, where he soon fell unconscious. After a brief hospital stay, O'Neil was discharged and returned to the jail, with a recommendation from the treating physician to place O'Neil on suicide watch and "closely monitor [him] for safety." That same day, a jail physician, Dr. Charles Clopton, Jr., ordered that O'Neil be admitted to suicide watch.

On October 11, 2019, Hill visited O'Neil at his cell with "two extraction team members." Upon entering, Hill said, "You know who the F— I am? . . . I'm Victor Hill. . . . I had to shut down 75 South and 75 Northbound because of you. I want you out of my fucking county." Hill then asked O'Neil, "Why did you do what you did?," and when O'Neil turned to respond, Hill ordered the extraction team members to take him down and strap him to a restraint chair, which was outside the cell door in the hallway.

O'Neil was strapped to the restraint chair for at least five hours, wearing nothing but a paper gown. O'Neil testified that he was strapped to the chair so tightly that he could not feel his hands, he still had marks on his wrists the following day, and he continues to feel a tingling sensation in his left wrist a couple of times per month, which he attributes to his incident. O'Neil was not evaluated by medical or nursing staff while restrained, and he was forced

to urinate on himself when no one released him to use the restroom.

The next day, October 12, 2019, Hill returned to O'Neil's cell with two extraction team members and said, "Okay, let's start this over." O'Neil testified that he "was freaked out" and "shaking because [he] didn't want to go back in the restraint chair," and he "knew the restraint chair was out back in the hallway." As Hill entered the room, another detainee looked at O'Neil, and, apparently in response, Hill ordered that detainee to be strapped to a restraint chair. O'Neil testified that he told Hill, "Look, I'll leave your—your city, your town. Just let me leave," and Hill replied, "Well, get used to this. You'll be here for a while." After these events, O'Neil had no further interaction with Hill.

Treatment notes suggest that the jail's medical staff cleared O'Neil to return to general population on October 12, 2019. But, according to a nurse's note, he "can't be released by [mental health], just cleared," because O'Neil was "on nutraloaf for 5 days and may be on security."

O'Neil remained in a suicide watch cell for nearly three weeks. The temperature in his cell was allegedly "in the 50s," but all O'Neil had for warmth or comfort was a paper gown, which he would put between himself and the cold concrete floor, since he lacked a mattress or bedding. He "couldn't feel [his] feet" and "couldn't sleep because [he] was so cold, shaking." He also had no hygiene items or means of cleaning himself, and was forced to use

his paper gown for toilet paper.  As a result, he was often naked in his cell and visible to female jail staff.

## II.

O'Neil sued Hill in federal court under 42 U.S.C. § 1983, alleging that Hill violated his constitutional rights as a pretrial detainee.  After preliminary proceedings not relevant to this appeal, Hill moved for summary judgment, asserting the defense of qualified immunity.

A magistrate judge issued a report and recommendation ("R&R"), concluding that Hill's motion should be denied.  The magistrate judge first concluded that there was a genuine dispute of fact as to whether Hill's use of a restraint chair was objectively reasonable.  The magistrate judge rejected Hill's argument that the force was reasonable because O'Neil failed to comply with a jail rule that inmates must face the wall with their hands behind their backs while in the presence of an officer.  Applying the factors courts use when assessing the reasonableness of force in this context, the judge concluded that a reasonable jury could find the following: (a) the force was disproportionate to any need for it; (b) no effort was made to limit the amount of force used; (c) the force could not be justified by O'Neil's pre-confinement behavior; and (d) O'Neil was not actively resisting when Hill ordered that he be placed in the restraint chair.

The magistrate judge also reasoned that it was clearly established that the use of force, including the use of a restraint chair, against a nonresistant detainee violated the Constitution.

Accordingly, the magistrate judge recommended denying qualified immunity as to O'Neil's claim based on use of a restraint chair.

Second, the magistrate judge concluded that O'Neil "presented evidence from which a reasonable jury could conclude that, despite [Hill's] denials, [Hill] ordered that [O'Neil] remain on suicide watch after medical staff had determined that he could be released to general population." The judge noted evidence of a "security" hold on O'Neil's medical release, as well as O'Neil's testimony that a jail nurse told him that he was being held under a "special restriction hold" that only "Victor Hill can sign off on." Although Hill argued that the nurse's statement was inadmissible hearsay, the judge reasoned that it could be reduced to non-hearsay at trial.

Thus, in the judge's view, "a reasonable jury could conclude that defendant overruled medical staff's decision that plaintiff could be released from suicide watch," and that Hill "did so as punishment for plaintiff's pre-confinement actions." The judge reasoned that the conditions were severe and violated O'Neil's constitutional rights, citing O'Neil's testimony "that he was in the suicide watch area for three weeks; that the temperature of his cell was in the 50s; that he was not provided toilet paper, toothpaste, or a shower; that his requests for those items were ignored; and that he only had a paper gown, which he had to tear to use as toilet paper." The judge rejected Hill's argument that these extremely restrictive conditions were necessary, stating that a reasonable jury could find otherwise based on evidence that O'Neil had been medically

24-13408                Opinion of the Court                7

cleared at the outset of his weeks-long stay in the suicide-watch cell.

The parties were notified that the failure to file objections within 14 days "waived any challenge to factual and legal findings to which there was no objection, subject to interests-of-justice plain error review."

Hill filed limited objections to the magistrate judge's R&R. First, he contended that the R&R improperly relied on other civil and criminal cases against Hill, including this Court's opinion affirming Hill's criminal convictions under 18 U.S.C. § 242 for using restraint chairs against unresisting pretrial detainees. And second, Hill maintained that there was no clearly established law providing fair notice that his use of a restraint chair in the circumstances of this case was unconstitutional. Hill raised no other objection.

The district court overruled Hill's objections and adopted the R&R. The court reasoned that it was clearly established that the Fourteenth Amendment prohibits punishing pretrial detainees and that excessive force amounts to punishment. Because the evidence supported a finding that Hill "employed substantial force against [O'Neil] by having him tightly restrained to a chair for five hours simply to punish [O'Neil] for his behavior prior to his arrest," the court concluded that Hill's alleged conduct violated clearly established law. The court did not address the magistrate judge's findings as to O'Neil's extended stay on suicide watch, except to note that the magistrate judge "did not clearly err in the portions of the R&R to which [Hill] lodged no objection." Hill now appeals.

### III.

We ordinarily review the denial of qualified immunity at summary judgment de novo. *Nelson v. Tompkins*, 89 F.4th 1289, 1295 (11th Cir. 2024). Summary judgment is warranted only if the evidence, "viewed in the light most favorable to the non-moving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).

Qualified immunity protects government officials from "the costs of trial and the burdens of broad-reaching discovery, as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hall v. Flournoy*, 975 F.3d 1269, 1274–75 (11th Cir. 2020) (cleaned up). If a government official broadly acted within the scope of his discretionary duties, the plaintiff must make two showings: (1) the official violated a federal statutory or constitutional right; and (2) "the violation contravened clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1275 (quotation marks omitted).

"Whether we have interlocutory jurisdiction to review the denial of summary judgment on qualified immunity grounds depends on the type of issues involved in the appeal." *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (quotation marks omitted). "We lack jurisdiction where the only issues appealed are evidentiary sufficiency issues—that is, fact-related disputes about whether the evidence could support a finding that particular

conduct occurred." *Nelson*, 89 F.4th at 1295. But if, in contrast, "the parties debate not only evidentiary sufficiency issues but also an abstract issue of law related to qualified immunity," such as whether the right was clearly established, "we may decide both questions." *Id.* at 1296 (quotation marks omitted). Even so, we may choose to "accept the district court's findings of fact if they are adequate." *Id.*

## IV.

Hill maintains that he is entitled to qualified immunity. As to O'Neil's extended stay on suicide watch, Hill contends that (1) the evidence fails to support a finding that Hill ordered O'Neil to be kept on suicide watch, and (2) no law clearly established that the conditions of O'Neil's confinement were unconstitutional. Regarding the use of a restraint chair, Hill maintains that (3) the evidence shows that the use of a restraint chair was objectively reasonable, and (4) the use of the restraint chair did not violate clearly established law.

At the outset, we note that Hill failed to preserve arguments (1), (2), and (3) for appeal because he did not object to the relevant portions of the magistrate judge's R&R addressing these issues. According to this Circuit's rules, if a party fails "to object to a magistrate judge's findings or recommendations contained in a report and recommendation," the party "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object."

11th Cir. R. 3-1.  Hill was so informed.  We can still "review the unobjected-to findings and conclusions of the magistrate judge for plain error or manifest injustice," *Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1097 (11th Cir. 2024) (quotation marks omitted), but plain error "rarely applies in civil cases," *Leford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) (en banc).  Accordingly, we review arguments (1)–(3) for plain error and argument (4) de novo.

## A. Suicide Watch

Here, Hill has made no showing of extraordinary circumstances calling for review to correct plain error or to prevent manifest injustice with regard to the denial of qualified immunity on O'Neil's suicide-watch claim.  In fact, Hill's appeal of this matter falls outside the scope of our limited jurisdiction in interlocutory appeals from the denial of qualified immunity because he raises issues of evidentiary sufficiency only.

The magistrate judge concluded that the evidence supported a reasonable finding that Hill "overruled [the] medical staff's decision that plaintiff could be released from suicide watch."  Hill asserts that this finding has no basis in the record and that the magistrate judge relied solely on "some hearsay and confusing jail medical records."  But we generally lack jurisdiction to review such "fact-related disputes about whether the evidence could support a finding that particular conduct occurred." *Nelson*, 89 F.4th at 1295.

And Hill does not present any "abstract issue of law related to qualified immunity" that would permit us to "decide both questions." *Id.* at 1296.  His argument about clearly established law is

24-13408                Opinion of the Court                11

really an argument about evidentiary sufficiency.  He does not dispute the magistrate judge's conclusion that it violates clearly established law to impose relatively harsh conditions of confinement on a pretrial detainee as *punishment*. *See, e.g., Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (stating that a pretrial detainee can "prevail by showing that the actions are not rationally related to a legitimate *nonpunitive* governmental purpose or that the actions appear excessive in relation to that purpose") (quotation marks omitted; emphasis added).  Instead, Hill contends that the mental-health unit's restrictive conditions were for O'Neil's own protection.  But the magistrate judge found that a reasonable jury could reject that claim based on the evidence.

Because Hill's challenge on this point is limited to "the determination of facts a party may, or may not, be able to prove at trial," *Koch v. Rugg*, 221 F.3d 1283, 1296 (11th Cir. 2000), we lack jurisdiction to reach that issue in this interlocutory appeal.  *See English*, 75 F.4th at 1156 (dismissing an interlocutory appeal where the officers raised only "issues of evidentiary sufficiency" about whether the plaintiff posed an immediate threat of serious physical harm).  So there are no grounds to invoke plain-error review.

### B.  Restraint Chair

As for the use of a restraint chair, Hill preserved his argument that it was not clearly established that the use of a restraint chair violated O'Neil's constitutional rights.  Notably absent from his briefing, however, is any reference to our decision affirming Hill's criminal convictions arising from the use of restraint chairs

on six other pretrial detainees at the Calhoun County jail. *United States v. Hill*, 99 F.4th 1289 (11th Cir. 2024).

In *Hill*, we rejected the bulk of the arguments Hill presents here, relying on the "longstanding principle that force, including passive restraint, is excessive if it is not rationally related to a legitimate nonpunitive governmental purpose." *Id*. at 1304 (quotation marks omitted). We reasoned that Hill's use of force was excessive because he "had no legitimate purpose for ordering compliant, nonresistant detainees who were in the secure jail environment into restraint chairs for at least four hours." *Id*. Accordingly, we held that "Hill had fair warning that his conduct violated the detainees' Fourteenth Amendment rights to be free from excessive force." *Id*. at 1305. In doing so, we recognized that "the standard for determining the adequacy of that warning is the same as the standard for determining whether a constitutional right was clearly established in civil litigation under § 1983." *Id*. at 1300 (cleaned up). Our decision makes clear that, for purposes of this § 1983 case, Hill had fair warning that the use of restraint chairs on compliant, nonresistant detainees, with no legitimate nonpunitive purpose, inflicted excessive and thus unconstitutional force. *Id*. at 1304–05.[2]

Hill also challenges whether O'Neil can prove a constitutional violation, contending that a need for force existed because O'Neil violated a prison rule after engaging in violent and unstable behavior, and that his injuries were de minimis. But Hill failed to

---

[2] The events at issue in *Hill* occurred between December 2019 and May 2020, around the same time as O'Neil's detention in October 2019.

24-13408                Opinion of the Court                13

raise any argument along these lines in his objections to the magistrate judge's R&R, which addressed these matters.

Nor has Hill shown good reason for us to consider this forfeited issue on appeal. *Hill* resolved the legal issue of clearly established law in these circumstances, and the remaining issues are fact-bound disputes about what the evidence could prove. *See Nelson*, 89 F.4th at 1295. The district court reasoned that summary judgment was not appropriate because a jury could conclude that O'Neil "was not resisting, being disruptive, nor displaying any sort of threatening behavior when Defendant forced him into the restraint chair and that, despite the fact that there was no need to do so, Defendant employed substantial force against Plaintiff by having him tightly restrained to a chair for five hours simply to punish Plaintiff for his behavior prior to his arrest." Those findings would support a constitutional violation. *See Hill*, 99 F.4th at 1304–05. Although Hill disputes these findings, he has made no showing that they are plainly erroneous or that allowing this case to proceed would cause manifest injustice. *See Smith*, 106 F.4th at 1097.

## V.

In sum, we affirm the district court's order denying qualifying immunity to Hill in this § 1983 action.

**AFFIRMED.**