[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14437
_____

D.C. Docket No. 5:12-cv-00281-CAR

FRED DALTON BROOKS,

Plaintiff - Appellant,

versus

WARDEN,
DEPUTY WARDEN WILLIAM POWELL,
DEPUTY WARDEN JUNE BISHOP,
SMU UNIT MANAGER MCMILLAN,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 3, 2015)

Before MARCUS, ROSENBAUM and GINSBURG,[*] Circuit Judges.

MARCUS, Circuit Judge:

---

[*] Honorable Douglas H. Ginsburg, United States Circuit Judge for the District of Columbia, sitting by designation.

Fred Dalton Brooks is currently incarcerated in the Special Management Unit ("SMU") at Georgia Diagnostic and Classification Prison ("GDCP") in Jackson, Georgia.  He has brought two Eighth Amendment claims under 42 U.S.C. § 1983: one against Warden Carl Humphrey, Deputy Warden William Powell, Deputy Warden June Bishop, and SMU Unit Manager James McMillan stemming from injuries he sustained during a prison riot; and another against only Deputy Warden Powell based on the conditions of his confinement at Spalding County Hospital following the riot.

Brooks alleges that within days of being placed in the SMU, he received threats of physical and sexual assault from the inmate in the adjacent cell.  He reported these threats but no action was taken.  The cell doors in the SMU were known to open unintentionally.  One day, all 32 doors in his SMU dormitory opened simultaneously, a riot ensued, and he was brutally attacked by the inmate who had threatened him.  He was taken to the hospital for three days, where he was placed in maximum-security restraints.  He was given medicine that gave him loose stools, but the guard refused to lower his waist-chains so he could defecate. He was forced to defecate in his jumpsuit for two days and sit in his own excrement, during which time the guard laughed and taunted him.  Brooks brought deliberate indifference claims relating to both incidents in the United States

2

District Court for the Middle District of Georgia.  The district court dismissed both.

After thorough review, we affirm the dismissal of Brooks's failure to protect claim arising out of the prison riot, but reverse as to his claim that his Eighth Amendment rights were violated by his alleged mistreatment at the hospital. Brooks did not adequately allege a substantial risk of serious harm in the period leading up the prison riot.  However, he did adequately plead an Eighth Amendment violation arising out of his three-day hospital stay.  Moreover, as to the claim that Brooks had been confined in conditions lacking in basic sanitation, Deputy Warden Powell is not entitled to qualified immunity.  He was put on fair notice both by our caselaw and the knowledge that forcing a prisoner to soil himself over a two-day period while chained in a hospital bed creates an obvious health risk and is an affront to human dignity.

Because Brooks has not alleged any physical injury resulting from his hospital stay, under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), he cannot recover compensatory or punitive damages.  We do hold today, however, that Brooks can proceed with his claim for nominal damages for a violation of his Eighth Amendment rights, and we remand to the district court for further proceedings consistent with this opinion.

I.

3

Brooks's amended complaint alleged the following essential facts.  Brooks was placed in the Special Management Unit on February 7, 2012, under the direct orders of Humphrey, Powell, and Bishop.  The SMU has six dormitories, each of which contains 32 individual cells.  Brooks's cell was located in the E-dorm, adjacent to a cell occupied by inmate Tremayne Watson.  Within days of Brooks's arrival, Watson allegedly threatened to physically attack and sexually assault him.  (Brooks was, at the time, 64 years old; five feet, nine inches tall; and 155 pounds.)  Despite being in a separate cell from Watson, Brooks feared for his safety.  He gave "detailed notes" of Watson's threats to Humphrey, Powell, Bishop, and McMillan.  Brooks was not moved from his cell.

On February 29, 2012, all 32 doors in the E-dorm opened simultaneously while a maintenance man and officer were in the control booth, and a violent riot broke out.  Watson attacked Brooks: he put him in a chokehold, punched him in the face, and beat him over the head with a ten-pound food tray, leaving Brooks with serious wounds, broken teeth, and a concussion.  Watson then dragged Brooks on his hands and knees into Brooks's cell and forced Brooks to perform oral sex.  After the riot was quelled, Brooks was initially taken to the prison infirmary for treatment, but his injuries were serious enough to require that he be transferred to Spalding County Hospital.

4

Brooks remained in the hospital for three days. Throughout his stay, Brooks was shackled with leg irons and maximum-security waist-chain handcuffs. He was guarded at all times by Deputy Warden Powell and three other correctional officers. He received medicine that "caused [his] bowels to have the liquidity of water." During his second day at the hospital, Brooks began asking and then pleading with Powell to allow him to use the toilet. Powell refused to temporarily lower Brooks's waist-chains so he could defecate. Instead, Brooks was forced to soil his jumpsuit for the remainder of his stay in the hospital. Powell and the correctional officers "laughed and made fun of" Brooks during this ordeal.[1]

The prison officials moved to dismiss the complaint and Brooks responded. In his Response, Brooks alleged for the first time that "the opening of cell doors, even multiple cell doors[,] in the SMU occurs regularly and is known by all the Defendants." He added that "multiple prisoners can sometimes get out of their cells simultaneously." Brooks also claimed that "most of the inmates housed in [the] SMU have been put there because they have committed acts of violence . . . in the prison system," and that it was a "well known fact" that "Watson [was] the most violent and troublesome inmate in [the] SMU."

---

[1] Although it does not form a part of his § 1983 claim, Brooks also alleged that Powell and the other officers refused to uncuff one of Brooks's hands so he could eat. Instead, they told him, "If you want to eat it bad enough, lick it off the tray like a dog." Brooks was then forced to lick the food off his tray while Powell and other officers laughed and ridiculed him.

5

On July 18, 2013, the magistrate judge entered a Report recommending that the Motions to Dismiss be granted in their entirety. As for the failure to protect claim, the magistrate judge concluded that Brooks's allegations did not suggest that the defendants had subjective knowledge of a strong likelihood that Brooks would be subject to an attack in prison. The court noted that the complaint had not alleged that Brooks and Watson had ever been outside their cells simultaneously, or that Watson "otherwise had the opportunity to carry out the threats." The magistrate judge also reasoned that the failure to move Brooks to another cell (farther from Watson) "amount[ed] only to negligence," not deliberate indifference. As for Brooks's hospital treatment claim, the magistrate judge concluded that Powell was protected by qualified immunity because "the facts alleged [did] not involve a risk to Plaintiff's health or safety," and, therefore, it was not clearly established that Powell's conduct violated the Eighth Amendment.

On August 8, 2013, Brooks moved for reconsideration of the magistrate judge's Report and Recommendation. The district court treated the motion as an objection to the magistrate's Report, and construed the new factual allegations as a second Motion to Amend. Brooks conceded that he "did not allege that Defendants could have foreseen . . . that the maintenance man would open all the cell doors" in the SMU. However, he maintained that the defendants "knew that multiple cell door openings 'could' occur" because "similar cell door openings

6

have occurred on prior occasions in [the] SMU." He claimed that "[t]here have been numerous instances of inmates being able to get out of their cells without authorization." As for his treatment at the hospital, Brooks reiterated that he was "forced to lie in his own excrement during his entire hospitalization," thereby directly exposing him to a significant health risk. Notably, Brooks did not allege that he sustained any physical injury as a result. Finally, he also claimed that Powell "refused to allow the nursing staff to clean" Brooks's body and refused to allow him to use an adult diaper.

The district court denied Brooks's re-styled Motion to Amend as "futile" because "[e]ven with these new allegations [he] fail[ed] to allege colorable Eighth Amendment claims for the same reasons stated in the [magistrate judge's] Recommendation."

Brooks timely appealed and was appointed counsel by this Court.

II.

We review de novo the dismissal of a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure; we accept all factual allegations as true and consider them in the light most favorable to the plaintiff. Starship Enters. of Atlanta, Inc. v. Coweta Cnty., 708 F.3d 1243, 1252 (11th Cir. 2013). We review the denial of a motion to amend for an abuse of discretion, but whether the motion is futile is a question of law that we review de novo. Smith v.

7

Fla. Dep't of Corr., 713 F.3d 1059, 1063 (11th Cir. 2013) (per curiam).  A district court's "denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."  Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) (internal quotation mark omitted)).  In determining whether a complaint survives Rule 12(b)(6), we ask whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "'Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed."  Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam)).

III.

Section 1983 creates a private civil rights cause of action for the deprivation of federal rights by persons acting under color of state law.  42 U.S.C. § 1983.  "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Helling v. McKinney, 509 U.S. 25, 31 (1993).  "The Eighth Amendment imposes a

8

duty on prison officials to take reasonable measures to guarantee the safety of the inmates." Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)) (alterations and internal quotation marks omitted). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." Farmer, 511 U.S. at 833 (alterations in original) (quoting Hudson v. Palmer, 468 U.S. 517, 526 (1984)). It has long been recognized that, in this vein, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Id. (quotation and alteration omitted). However, not "every injury suffered by one inmate at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834.

"A prison official violates the Eighth Amendment when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Caldwell, 748 F.3d at 1099 (emphasis omitted) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir.2003)) (internal quotation marks omitted). To prevail on such a claim brought under § 1983, the plaintiff must show: (1) a substantial risk of serious harm; (2) the

defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation. See id. The first element, a substantial risk of serious harm, is evaluated using an objective standard. Id. There must be a "strong likelihood" of injury, "rather than a mere possibility," before an official's failure to act can constitute deliberate indifference. Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam) (quoting Edwards v. Gilbert, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Brooks has failed to plausibly allege that a substantial risk of serious harm existed prior to the prison riot. For Brooks to face serious harm, he and Watson both needed to be released from their cells simultaneously in an unsupervised situation. Although Brooks alleged that SMU doors had opened before, he did not allege that he and Watson had ever been let out of their cells at the same time, let alone in an unsupervised or chaotic environment where an attack could occur. Nor did he ever allege that all 32 doors in the E-dorm had ever opened simultaneously, creating the conditions for a prison riot. The most that can be taken from Brooks's complaint, even in the most favorable light, is that it was possible for the events that transpired to occur: that his and Watson's cell doors would open simultaneously during a situation that prevented immediate intervention by the guards, leading to serious injury. But mere possibility is not enough -- the plaintiff

10

must plausibly allege a strong likelihood of serious harm, and Brooks has not here. Therefore, his claim must fail.[2]

Brooks makes two arguments about the substantial risk of serious harm. First, he claims that the very fact that he was attacked demonstrates that the risk he faced -- and that the prison guards ignored -- was substantial. This argument does not hold up to logical scrutiny; it rests entirely on hindsight bias. The mere fact that an event takes place does not indicate how likely it was to occur. A risk calculation is a prospective determination of what might happen based upon events that have already occurred. Brooks's injuries demonstrate that he suffered serious harm, but not all serious harm is precipitated by substantial risk; freak accidents do occur. The very fact of an injury may, in some circumstances, be a factor in assessing that ex ante risk, but it cannot be sufficient on its own to prove that a substantial risk existed. Indeed, we have warned that "[w]e will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1320 (11th Cir. 2005).

Brooks relies on two cases to support this argument; neither is apposite. First, in Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, a prisoner brought a deliberate indifference claim against prison officials after he was attacked by his

---

[2] Because Brooks has not adequately alleged a substantial risk of serious harm, we need not consider whether his pleadings satisfy the remaining elements of a deliberate indifference claim.

cellmate. A panel of this Court noted in dicta that the defendants had not disputed the existence of a substantial risk of serious harm, given the perpetrator's history of prison violence, his record of starting fires in their shared cell, "and his violent assault on [the] plaintiff." Id. at 1100. Thus, the Caldwell Court merely suggested in dicta that the attack against that plaintiff was one of many factors that went into the calculus of determining a substantial risk of serious harm. Caldwell does not stand for the proposition -- nor could it -- that a single attack, alone, is somehow sufficient to show a substantial risk of serious harm. Brooks's second case, an unpublished one, Johnson v. Boyd, 568 F. App'x 719 (11th Cir. 2014) (per curiam), is equally unconvincing. In Johnson, the Court addressed a claim of deliberate indifference regarding the prison officials' inaction after the plaintiff had been attacked, not before. Id. at 722. In that context, the Court noted that "the [plaintiff's] allegations describing [the] physical attack are sufficient to show an objective risk of injury," but the attack did not do double-duty as both an allegation of the harm suffered and an allegation of the risk that said harm would occur. Id.

Brooks also argues that the combination of two allegations creates a substantial risk of serious harm: first, Watson's violent nature and specific threats leveled against Brooks; second, the fact that SMU cell doors had opened and allowed inmates out of their cells "numerous" times in the past. Brooks claims that, taken together, this creates a plausible allegation of a substantial risk. But

12

even construing Brooks's pro se allegations liberally, he has not said enough to plausibly allege a substantial risk of serious harm. The extant risk, as alleged, was no more than possible, not substantial.

Brooks cites to Rodriguez v. Secretary for the Department of Corrections, 508 F.3d 611 (11th Cir. 2007), in support of his claim. In Rodriguez, the plaintiff had been segregated from the general prison population for security purposes, during which time he received (and reported to prison authorities) specific death threats from members of his former gang who were prisoners in the general population. Id. at 613-15. His requests for a transfer to another facility were denied. Within hours of his release into the general prison population, a member of his former gang stabbed him in the chest and back. Id. at 615-16. The Court found that "the gang-related threats made on Rodriguez's life, which were explicitly reported to prison officials, present[ed] a substantial enough risk of harm to trigger a prison official's Eighth Amendment duty to act." Id. at 617 n.12.

But, notably, in Rodriguez, the inmate's planned release into the general prison population indisputably put him at risk for attack. In sharp contrast, in this case, only the utterly unplanned and simultaneous opening of both Brooks's and Watson's doors would put Brooks in harm's way. The risk Brooks faced, while not nonexistent, was far more attenuated than the risk found in Rodriguez. It required a "perfect storm of events" in which all 32 doors in a maximum security

13

wing opened at once. Appellee Brief at 23. Until that event, Brooks was not in imminent or foreseeable danger. He has not alleged that either he or Watson had ever gotten free of their cells before, let alone at the same time. No case from this Court or the Supreme Court has found so remote a risk to be substantial enough to trigger Eighth Amendment liability. The district court was correct to dismiss Brooks's failure to protect claim.

## IV.

We turn next to Brooks's Eighth Amendment claim arising out of his alleged mistreatment in the hospital. The Eighth Amendment governs the conditions of a prisoner's confinement. Helling, 509 U.S. at 31. Although "[t]he Constitution does not mandate comfortable prisons," Farmer, 511 U.S. at 832 (quotation omitted), it does not allow a prisoner to be exposed to an objectively "unreasonable risk of serious damage to his future health." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Helling, 509 U.S. at 35). Moreover, the conditions of confinement must meet "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102-03 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958) (internal quotation marks omitted)).

As we said before, Brooks must have plausibly alleged a deliberate indifference claim: (1) a substantial risk of serious harm; (2) the defendants'

14

deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation. The plaintiff must also navigate around the doctrine of qualified immunity. Ultimately, we conclude that Brooks has adequately pled a § 1983 Eighth Amendment claim, and that Powell is not protected by qualified immunity. However, because Brooks has not alleged a specific physical injury resulting from this Eighth Amendment violation, his claims for compensatory and punitive damages are barred by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). But we hold that his constitutional claim for nominal damages is not barred, and we remand to the district court for consideration of that claim.

## A.

To recap: Brooks alleges that Powell refused to allow Brooks to lower the waist-chains that bound him so that he could use the toilet while in the hospital. As a result, Brooks was forced to defecate into his jumpsuit and sit in his own feces for two days during his three-day hospital stay. Brooks also alleges that Powell refused to allow the nurses to clean Brooks or offer him an adult diaper, and that Powell and the other guards laughed at Brooks and mocked him throughout the ordeal. These serious allegations state an Eighth Amendment violation under our caselaw.

15

This Court, and the old Fifth Circuit, have long recognized a "well established" Eighth Amendment right "not to be confined . . . in conditions lacking basic sanitation." Chandler v. Baird, 926 F.2d 1057, 1066-67 (11th Cir. 1991). In Chandler v. Baird, the plaintiff alleged that he had been deprived of toilet paper for three days, running water for two days, and was not provided with soap, a toothbrush, toothpaste, or bed linens. These conditions, combined with the inadequate heating of his cell, were sufficient to state an Eighth Amendment violation. Id. at 1063. We explained that "conditions that 'deprive inmates of the minimal civilized measure of life's necessities' are violative of the 'contemporary standard of decency'" that the Eighth Amendment demands. Id. at 1064 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Many years earlier, in Novak v. Beto, 453 F.2d 661 (5th Cir. 1971),[3] the former Fifth Circuit surveyed Eighth Amendment prison conditions cases and concluded: "[T]here is a common thread that runs through all these cases . . . . That thread is the deprivation of basic elements of hygiene." Id. at 665. In reaching this conclusion, the Court cited with approval cases in which prisoners had successfully stated Eighth Amendment claims based on being placed in contact and close proximity with excrement -- just as Brooks alleges he was. See id.

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Indeed, every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation.  See Budd v. Motley, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam) ("[A]llegations of unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment."); Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days . . . ."), superseded by statute on other grounds as recognized by Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (2000); Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (noting that "inmates are entitled to reasonably adequate sanitation" and finding Eighth Amendment violation where cell was "covered with . . . human waste"); Inmates of Occoquan v. Barry, 844 F.2d 828, 836 (D.C. Cir. 1988) (recognizing "sanitation" as a "basic need" for prisoners protected by the Eighth Amendment); Parrish v. Johnson, 800 F.2d 600, 609 (6th Cir. 1986) ("[T]he Eighth Amendment protects prisoners from being . . . denied the basic elements of hygiene.") (quotation omitted); Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986) ("[A] state

17

must furnish its prisoners with reasonable adequate . . . sanitation . . . to satisfy [the Eighth Amendment's] requirements.") (quotation and alteration omitted); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) (noting that the failure to provide "minimally sanitary" conditions "amounts to a violation of the Eighth Amendment"); Hawkins v. Hall, 644 F.2d 914, 918 (1st Cir. 1981) (explaining that prison conditions "must be sanitary") (quotation omitted); Hite v. Leeke, 564 F.2d 670, 672 (4th Cir. 1977) (recognizing that "the denial of decent and basically sanity living conditions and the deprivation of basic elements of hygiene" can violate the Eighth Amendment) (quotation omitted); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."). Moreover, the Supreme Court recognized in Hope v. Pelzer, 536 U.S. 730 (2002), that "a deprivation of bathroom breaks . . . created a risk of particular discomfort and humiliation" for the plaintiff, a prisoner who had been attached to a hitching post for seven hours. Id. at 738.

In some ways, Brooks's allegations are worse than those found in the governing caselaw. Brooks claims that he was "forced to lie in direct and extended contact with his own feces without any ability to clean himself, while confined to a hospital bed in maximum security constrains." The Baird plaintiff, on the other hand, could move around his cell and was provided a functional toilet that he was

18

allowed to use.  And Brooks alleges that he was denied the ability to use the bathroom or clean himself for a full two days, while the plaintiff in Hope was deprived of toilet access for seven hours.  Id. at 735.

Powell argues, nevertheless, that the Eighth Amendment protects only against "unnecessary and wanton infliction of pain," and that Brooks has not alleged any such pain from his hospital experience, so he has failed to state a claim.  This argument mirrors the district court's conclusion that the plaintiff's hospital treatment allegations amount to nothing more than "mere discomfort," which is not cognizable under the Eighth Amendment.  On the contrary, the Baird Court held that the plaintiff's claim defeated summary judgment without any requirement that he allege pain.  926 F.2d at 1066.  Brooks has sufficiently alleged a substantial risk of serious harm, as the health risks of prolonged exposure to human excrement are obvious.  See DeSpain, 264 F.3d at 974 (finding substantial risk of serious harm where prisoner was exposed to standing water in his cell that contained his own urine and other prisoners' waste for 36 hours).  Thus, we have little trouble concluding that Powell's alleged actions satisfy the objective element of an Eighth Amendment violation.

Brooks has also sufficiently alleged that Powell was deliberately indifferent to the substantial risk of serious harm Brooks endured during his hospital stay. Brooks satisfies the subjective component of deliberate indifference: he

specifically alleged that he repeatedly begged Powell to let him remove his jumpsuit and use the toilet, so Powell was plainly aware of the risk Brooks faced. Brooks also satisfies the objective component of deliberate indifference because he alleges that Powell did not "respond reasonably" to Brooks's request -- far from it. Instead, Brooks claims that Powell subjected him to derision and ridicule while he was forced to repeatedly soil himself.

Powell attempts to excuse his alleged behavior by citing the "legitimate security concerns" present in the hospital. To the extent Powell claims that reasons of public safety demanded that Brooks be required to sit in a soiled jumpsuit for two days, he can offer such evidence at a later stage in the proceedings. But taking all of Brooks's allegations as true, as we must at this stage, his description of Powell's behavior states a plausible claim of deliberate indifference. Brooks was 64 years old and 155 pounds at the time, and was monitored by four armed officers at all times -- it is far from obvious how allowing Brooks to use the toilet would have posed a serious safety concern. Moreover, Powell's alleged laughter and taunts are wholly inconsistent with reasonable behavior taken for legitimate public safety reasons.

Finally, there is no dispute as to the causation element of Brooks's hygiene claim. According to Brooks, Powell supervised him in the hospital, refused his requests to use the toilet, refused to allow the nurses to clean him, and refused him

20

the use of an adult diaper.  These actions directly resulted in an alleged Eighth Amendment violation.

B.

The district court dismissed Brooks's hygiene claim on the ground that Powell was protected by qualified immunity.  We disagree.

"[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "In order to receive qualified immunity, the public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'"  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991)).  No one disputes that Powell was acting within the scope of his discretionary authority when he supervised Brooks in the hospital.

After the defendant has established that he was acting in a discretionary capacity, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Id.  This requires establishing that the official's alleged conduct violated a constitutional right, and that the constitutional right at issue was clearly

21

established.  See id.  Courts may take up these two steps in either order.  See

Pearson, 555 U.S. at 236.

Having determined that Powell's alleged conduct violated the Eighth

Amendment, we turn to whether the Eighth Amendment right at issue "was clearly

established such that a reasonable official would understand that what he is doing

violates that right."  Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en

banc) (quoting Bashir v. Rockdale Cnty., 445 F.3d 1323, 1327 (11th Cir. 2006)

(internal quotation marks omitted).  A right can be clearly established "either by

similar prior precedent, or in rare cases of 'obvious clarity.'"  Gilmore v. Hodges,

738 F.3d 266, 277 (11th Cir. 2013).  "Exact factual identity with a previously

decided case is not required, but the unlawfulness of the conduct must be apparent

from pre-existing law."  Coffin, 642 F.3d at 1013.

The district court found "no clearly established law" warned Powell that his

alleged actions constituted an Eighth Amendment violation.  But both Baird and

Novak (neither mentioned by the district court) should have been sufficient to put

Powell on notice.  Baird recognized that Eighth Amendment violations can arise

from "conditions lacking basic sanitation," including inadequate provision of

hygiene items such as toilet paper.  926 F.2d at 1066.  Novak noted that

"deprivation of basic elements of hygiene" was a "common thread" running

through prison conditions cases, including several involving proximity to human

22

waste. 453 F.2d at 665. It's true that neither case involved the precise circumstances at issue here. But "[e]xact factual identity with a previously decided case is not required." Coffin, 642 F.3d at 1013; see Hope, 536 U.S. at 741 ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). Baird and Novak, together, would have provided "fair and clear warning" that Brooks's alleged treatment would violate the Eighth Amendment. Hope, 536 U.S. at 741 (quoting United States v. Lanier, 520 U.S. 259, 271 (1997)).[4]

What's more, a reasonable official should not have needed Baird or Novak to know that Powell's alleged actions violated Brooks's Eighth Amendment rights. This is the "rare case[] of 'obvious clarity,'" Gilmore, 738 F.3d at 277, in which "conduct is so egregious that no prior case law is needed to put a reasonable officer on notice of its unconstitutionality," id. at 279. Forcing a prisoner to soil himself over a two-day period while chained in a hospital bed creates an obvious health risk and is an affront to human dignity. Laughing at and ridiculing an inmate who is forced to sit in his own feces for an extended period of time is not merely

---

[4] The appellees distinguish these cases on the ground that they concerned conditions within a prison cell, while Brooks's treatment took place in a hospital room. True enough. But they do not persuasively explain why this distinction is relevant to our constitutional analysis, or why that difference alone prevented Powell from being on notice. After all, Hope itself involved conduct that took place outside of a prison cell, yet the Supreme Court held that earlier cases involving similar conduct inside a prison cell should have provided officials with sufficient notice. 536 U.S. at 742-43. And in each instance, the inmate was restrained by authority of a legal determination and placed in the custody of prison officials.

23

unreasonable, but an act of "obvious cruelty." See Hope, 536 U.S. at 745 ("The obvious cruelty inherent in this practice should have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment.")  Any reasonable officer should have known that such conduct was at war with the command of the Eighth Amendment. Although qualified immunity is a "muscular doctrine," it cannot save Powell here. Foy v. Holston, 94 F.3d 1528, 1534 (11th Cir. 1996).

V.

Brooks's claim, however, is further governed by the Prison Litigation Reform Act of 1995, Pub.L. No. 104-134, §§ 802-10, 110 Stat. 1321, 1366-77 (1996).  The PLRA places substantial restrictions on the judicial relief that prisoners can seek, with the goal of "reduc[ing] the number of frivolous cases filed by imprisoned plaintiffs, who have little to lose and excessive amounts of free time with which to pursue their complaints." Al-Amin v. Smith, 637 F.3d 1192, 1195 (11th Cir. 2011) (quoting Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002)). The section of the Act at issue here, 42 U.S.C. § 1997e(e), reads this way:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .

This Court has held that § 1997e(e) applies to all federal civil actions, including constitutional claims brought under § 1983. See Harris v. Garner (Harris II), 216

24

F.3d 970, 984-85 (11th Cir. 2000) (en banc).  The district court did not consider the applicability of § 1997e(e) to Brooks's claims, since it dismissed them on other grounds.

In this case, Brooks did not allege any physical injury arising from his hospital stay.  Nevertheless, he sought "compensatory . . . punitive, and nominal damages" from Powell.  Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than de minimis) physical injury.  See Al-Amin, 637 F.3d at 1198 (punitive); Harris v. Garner (Harris I), 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory), reh'g en banc granted and opinion vacated, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part, 216 F.3d 970.  However, we have never had the opportunity in a published opinion to settle the availability of nominal damages under the PLRA.  We do today, and we hold that nothing in § 1997e(e) prevents a prisoner from recovering nominal damages for a constitutional violation without a showing of physical injury.

It has long been recognized in the caselaw of the Supreme Court and our Circuit that nominal damages serve to "vindicate[] deprivations of certain 'absolute' rights that are not shown to have caused actual injury."  Carey v. Piphus, 435 U.S. 247, 266 (1978); see also Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11 (1986) ("[N]ominal damages . . . are the appropriate means of

25

'vindicating' rights whose deprivation has not caused actual, provable injury . . . ."); Hughes v. Lott, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."). The Supreme Court has observed that the availability of nominal damages serves a symbolic function: it "recognizes the importance to organized society that those rights be scrupulously observed," even if no injury occurs that would justify compensatory damages. Carey, 435 U.S. at 266; see Calhoun v. DeTella, 319 F.3d 936, 941 (7th Cir. 2003) ("[N]ominal damages are not compensation for loss or injury, but rather recognition of a violation of rights." (quotation omitted)); Douglas Laycock, Modern American Remedies 615-16 (4th ed. 2010) (noting that nominal damages "serve a declaratory function").

As we see it, both the text and purpose of the PLRA support the conclusion that § 1997e(e) does not bar a prisoner from recovering nominal damages without a showing of physical injury. First, the plain text of § 1997e(e) does not encompass nominal damages claims for constitutional violations. Brooks's nominal damages claim is not brought "for mental or emotional injury suffered while in custody without a prior showing of physical injury" -- rather, it is designed to vindicate the deprivation of his constitutional rights. Indeed, the very theory of such a nominal damages claim "dispenses with any need for injury other than the deprivation of

26

the right itself." Davis v. Dist. of Columbia, 158 F.3d 1342, 1349 (D.C. Cir. 1998). This interpretation of § 1997e(e) is consistent with the PLRA's purpose of minimizing frivolous prison litigation. We have held that § 1997e(e) applies to punitive damages, partly because any other interpretation would "thwart[]" Congress's "evident intent," and allow prisoners to avoid the PLRA's physical injury requirement "simply by adding a claim for punitive damages." Al-Amin, 637 F.3d at 1197 (quoting Davis, 158 F.3d at 1348)). But the prospect of punitive damages provides a major financial incentive for prisoners to bring frivolous litigation. See Dawes v. Walker, 239 F.3d 489, 497 (2d Cir. 2001) (Walker, C.J., writing separately) ("The potential for a windfall punitive award -- no matter how remote -- provides a powerful economic incentive for prisoners to continue to file frivolous § 1983 claims based on concocted or imagined emotional injuries."), overruled on other grounds as recognized by Phelps v. Kapnolas, 308 F.3d 180, 187 n.6 (2d Cir. 2002). The availability of merely nominal damages provides no such lure. "[P]risoners are presumably a good deal less likely to embark on a lawsuit if there is no prospect of a pecuniary reward." Davis, 158 F.3d at 1349. Allowing claims for nominal damages without a physical injury does not pose the same threat to Congress's intent.

Our conclusion that nominal damages may be sought by an inmate for constitutional injury is in accord with the determination made by every other sister

circuit to consider this issue.  See Kuperman v. Wrenn, 645 F.3d 69, 73 n.5 (1st Cir. 2011); Hutchins v. McDaniels, 512 F.3d 193, 198 (5th Cir. 2007) (per curiam); Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004); Calhoun, 319 F.3d at 941; Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 878-79 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 252 (3d Cir. 2000).  The D.C. Circuit, the only other circuit court to share our view that § 1997e(e) applies to punitive damages, has never directly addressed the availability of nominal damages.  But it, too, has noted in dicta that this issue is "clearly harder . . . than for punitive damages," both because the theory behind nominal damages "dispenses with any need for injury other than the deprivation of the right itself" and because such damages create precious little financial incentive for prisoner plaintiffs.  Davis, 158 F.3d at 1349.

We make clear and hold today what we have long implied in our own caselaw.  In past § 1997e(e) prison litigation cases, we have expressly held open the possibility that nominal damages may be available.  See Harris I, 190 F.3d at 1288 n.9; Al-Amin, 637 F.3d at 1199 n.10.  In some cases, we have suggested in dicta that nominal damages are available.  Thus, for example, in Hughes v. Lott we observed that "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual

28

injury sufficient to entitle him to compensatory damages," and cited with approval the cases of five other circuits that had interpreted § 1997e(e) as we do today. 350 F.3d at 1162 (citing the Second, Third, Seventh, Ninth, and Tenth Circuits). (In Hughes, we remanded to the district court for consideration of whether nominal damages were available under § 1997e(e) without a showing of physical injury, and whether the plaintiff had sought nominal damages in the first place. Id. at 1162-63.) And in Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007), abrogated by Sossamon v. Texas, 131 S. Ct. 1651 (2011),[5] we noted in dicta that "nominal damages may sometimes be appropriate under § 1997e(e)," and that "in earlier cases, we have suggested that § 1997(e) does not preclude a prisoner from seeking nominal damages if he can establish that he has suffered a constitutional injury." Id. at 1271 (citing Hughes, 350 F.3d at 1162). Indeed, in Smith we determined that the prisoner plaintiff "may seek nominal damages" despite his lack of alleged physical harm, id., and proceeded to consider the merits of his claim -- although we ultimately determined that it was meritless, id. at 1276. Finally, today's holding confirms what we have explicitly held in a number of non-binding unpublished opinions. See, e.g., Logan v. Hall, 604 F. App'x 838, 840 (11th Cir. 2015) (per curiam); Jackson v. Hill, 569 F. App'x 697, 699 (11th Cir. 2014) (per curiam);

---

[5] In Smith, this Court held that the Eleventh Amendment did not shield the state and its agents from official capacity actions for damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA). 502 F.3d at 1276 n.12. In Sossamon, the Supreme Court disagreed, holding that RLUIPA did not clearly waive Eleventh Amendment sovereign immunity for monetary damages, thereby abrogating that portion of Smith. 131 S. Ct. at 1659-63.

<u>Williams v. Brown</u>, 347 F. App'x 429, 436-37 (11th Cir. 2009) (per curiam);

<u>Frazier v. McDonough</u>, 264 F. App'x 812, 815 (11th Cir. 2008) (per curiam).

Thus, we conclude that Brooks may proceed with his § 1983 Eighth Amendment claim stemming from his alleged mistreatment in Spalding County Hospital, but only for nominal damages.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.