[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14337
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-03392-TWT

AMY EVERETT,

Plaintiff - Appellant,

TJELVAR EVERETT,

Plaintiff,

versus

COBB COUNTY, GEORGIA,
OFFICER JAMES W. HOPKINS,
in his individual and official capacities,

Defendants - Appellees,

LANI MESHELLA MILLER,
in her individual capacity,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 21, 2020)

Before JILL PRYOR, BRANCH and MARCUS, Circuit Judges.

PER CURIAM:

Amy Everett ("Everett") was arrested for sending threatening and harassing emails to a former colleague, Lani Miller ("Miller"). She then brought this § 1983 action against Detective James Hopkins, the officer who applied for and secured a warrant for her arrest from a judicial officer, for violating, among other things, the First and Fourth Amendments; Cobb County, Georgia for maintaining a pattern and practice of violating the First and Fourth Amendments; and Miller for conspiring with the police to violate the First and Fourth Amendments. The district court dismissed the claim against Miller, holding that Everett had not alleged sufficient facts from which it could be plausibly inferred that Miller had conspired with the police. Thereafter, it granted summary judgment to Detective Hopkins and the County, concluding, on the undisputed record, that all of Miller's various claims were barred by qualified immunity, official immunity and/or sovereign immunity. After careful review, we affirm.

2

The relevant, undisputed background is this.  In 2007, Everett's husband, Tjelvar Everett ("Tjelvar"), had an extramarital affair with Miller when all three were public school teachers at the same school in Hiram, Georgia.  In 2015, after the Everetts had moved and lived in Alabama for six years, Tjelvar revealed the affair to Everett.  Understandably angry, Everett initially called Miller to express her outrage, and then sent her an ongoing cavalcade of emails and Facebook messages, which were vituperative, lewd, laden with expletives, and threatened an evolving panoply of harms.[1]  Everett also created several accounts on social media posing as Miller and Tjelvar, and sent similarly graphic messages to Miller's husband, mother, cousin, and new school colleagues.[2]  Everett's campaign reached a crescendo in

---

[1] The messages began on January 2, 2015, when Everett messaged Miller and her husband on Facebook Messenger and said, "I just want you to know that for whatever reason TJ felt his need to unburden himself with his past transgressions . . . .  I never considered us friends, but I also did not think you were the type to f*ck a married guy with a new baby, whose wife was in the middle of postpartum depression."  The message continued in this vein.  Several days later, on January 11, 2015, Everett sent Miller, without explanation, a link to a news article about a "revenge website" that "shames accused mistresses."

Many more messages followed.  On July 27, 2015, for example, Everett sent Miller an email with the subject line "Beware HHS.  She will sleep with your husband and smile to your face."  The email conveyed Everett's anger about the affair, insulted Miller, and said "everyone" was "[b]cc'd" on the email "so you can pretend this never happened, Lani."  Then, on August 24, 2015, Everett sent three emails to Miller from the account lani_miller@aol.com, asking if Miller's principal, son and other family members knew she was "a wh*re" and repeatedly calling her names.  That same day she emailed Miller from the account lanimiller666@yahoo.com, writing that Everett wanted to see Miller cry and using more expletives.

[2] On January 10, 2015, for example, Everett messaged Miller's husband on Facebook, warning that Miller is "going to learn what it means to f*ck with someone's family," and demanding an apology.  On August 24, 2015, Everett sent an email from the account lani_miller@aol.com to Miller's mother, claiming to be Miller, which said, among other things: "I need you to know I f*cked this biology teacher who was married and I knew his wife," and

3

August 2015, and Miller, understandably frightened, reported what was happening to Detective Hopkins at the Cobb County Police Department on August 25, 2015. She gave Hopkins copies of the emails and told him she wanted the conduct to stop. Hopkins attempted to contact Everett by telephone but was unable to do so, and he then sent a cease and desist letter to all of the email accounts she had been using.

The cease and desist letter said that "I[f] there is any further communication beyond today's date of August 26, 2015 at the hour of 1:00pm, I will secure a warrant for your arrest on the charge of Harassing Communications and Stalking." At 1:36 p.m. on August 26, 2015, Everett sent a final email to Miller. Hopkins secured a warrant for Everett's arrest and requested her extradition from Alabama. The Everetts learned about the warrant about a week later from an attorney, and Tjelvar called Hopkins, asking him to rescind the warrant, which he said it was too late to do. A few hours later, Everett was arrested at her home. After Everett agreed to attend anger management classes, the prosecutor declined to pursue the case.

---

"Were you a wh*re, too, mom?" On August 26, 2015, Everett wrote to Miller's husband from an account named tj.everett@live.com, posing as Tjelvar, and purported to describe the sex Tjelvar and Miller had and to suggest that Miller's husband divorce her.

That same day, Everett again posed as Tjelvar in an email to Miller's department at the new school at which Miller was teaching, detailed the affair, and warned that Miller "is not who you think she is. She is a snake in the grass and so am I." Everett followed up with another email to the department, this one from the lani_miller@aol.com account, which pretended to be Miller admitting to the affair and giving additional graphic details.

On September 6, 2017, Everett and Tjelvar sued, bringing federal civil rights claims and tort claims under Georgia state law against Detective Hopkins, Cobb County, and Miller. The district court granted Miller's motion to dismiss, and later granted summary judgment to Hopkins and the County. This timely appeal follows.

In reviewing de novo the district court's grant of summary judgment to Detective Hopkins and the Cobb County Police Department, we resolve all issues of material fact in favor of the plaintiff. Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). We will affirm a grant of summary judgment if the movant has shown, based on our review of the entire record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Similarly, in reviewing de novo the district court's grant of Miller's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, we accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted).

First, we are unpersuaded by Everett's claim that the district court erred in granting summary judgment to Detective Hopkins on qualified immunity grounds. The doctrine of qualified immunity protects government officials, like Hopkins,

5

"from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quotations omitted). "In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194 (quotations omitted). There is no dispute that Hopkins was acting within his discretionary authority in this case. Thus, Everett has the burden to show that "the official's alleged conduct violated a constitutional right, and that the constitutional right at issue was clearly established." Brooks v. Warden, 800 F.3d 1295, 1306 (2015). Courts may take up these two steps in either order, though it is unnecessary to decide both where it is plain that the law is not clearly established. See Pearson, 555 U.S. at 227, 242. This case is easily resolved on the second prong, so it is unnecessary to resolve the first. Id.

A right can be clearly established "either by similar prior precedent, or in rare cases of 'obvious clarity.'" Gilmore v. Hodges, 738 F.3d 266, 277 (11th Cir. 2013). To show that a right is clearly established by prior precedent, the plaintiff has a burden of offering precedent "particularized" to the facts of the case by "identify[ing] a case where an officer acting under similar circumstances" was held to violate the Constitution. White v. Pauly, 137 S. Ct. 548, 552 (2017) (quotation omitted). "Exact factual identity with a previously decided case is not required, but

6

the unlawfulness of the conduct must be apparent from pre-existing law." Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc).    Put simply, the constitutional question at issue must be "beyond debate."  White, 137 S. Ct. at 551 (quotations omitted).

Here, Everett has not established that Detective Hopkins violated Everett's clearly established First Amendment right when he allegedly secured an arrest warrant in retaliation for her harassing emails.  To succeed on this claim, Everett needed to show, first, that her speech or act was constitutionally protected; second, that Defendant Hopkins' retaliatory conduct adversely affected the protected speech; and, third, that there is a causal connection between the retaliatory actions and the adverse effect on speech.  Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)).

On this record, Everett has not pointed us to any clearly established case law suggesting that her communications were protected by the First Amendment.  In the emails she sent to Miller, Everett: (1) demanded an apology using threatening language; (2) warned that she planned to visit Miller's place of work because she "need[ed] to see [her] cry"; (3) repeatedly described the alleged sexual encounter between Miller and Tjelvar in detail; (4) threatened to upend Miller's personal and professional life; and (5) followed through on that threat.  It is well established that obscene communications intended to harass and frighten the recipient are not protected speech.  See Miller v. California, 413 U.S. 15, 21 (1973) (affirming that

obscenity can be criminalized); Virginia v. Black, 538 U.S. 343, 359 (2003) (affirming that threatening speech can be criminalized).  Indeed, in a case factually analogous to this one, we held that graphic harassing and threatening communications like those here -- e.g., "Hey Sue, why don't you take one of them f*ckin' school buses . . . and use it like a vibrator . . . " -- were not protected by the First Amendment because they were legally obscene.  United States v. Eckhardt, 466 F.3d 938, 945 (11th Cir. 2006).

In contrast, the case on which Everett primarily relies, Watts v. United States, 394 U.S. 705, 706 (1969), is entirely distinguishable from this one on its facts.  In that case, the Supreme Court held that it violated the First Amendment to arrest a protester who said "If they ever make me carry a rifle the first man I want to get in my sights is L.B.J."  The facts of Watts do not, in any way, make clear that Everett's personal, apolitical and obscene campaign to ruin Miller's life is similarly protected. Nor does Everett make any showing that this is a case of obvious clarity.  Thus, because Everett has failed to carry her burden to show that, under clearly established law, her communications were protected by the First Amendment, Hopkins is entitled to qualified immunity on her First Amendment claim.

For similar reasons, Hopkins is entitled to qualified immunity on Everett's Fourth Amendment claim.  Everett argues that Hopkins violated her Fourth Amendment rights by obtaining a warrant without probable cause.  But officers are

8

protected by qualified immunity in this context so long as there was "arguable probable cause" for the warrant they obtained. Crosby v. Monroe Cty., 394 F.3d 1328, 1332 (11th Cir. 2004); see also Jones v. Cannon, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) ("[T]he [qualified immunity] inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed.") (quotations omitted). Because Everett's communications plainly fell within Georgia's harassing communications statute[3] and criminalizing those communications did not, as we've discussed, violate clearly established First Amendment law, the warrant in this case was plainly supported by arguable probable cause.

Moreover, to the extent Everett seeks to argue that the warrant violated the Constitution because she was located in Alabama, we are unpersuaded. It has long been understood that a state's constitutional authority encompasses punishment for crimes committed out of the state that were intended to produce harm within the state, and there is no doubt that the harm of the harassing communications in this case took place in Georgia. See Strassheim v. Daily, 221 U.S. 280, 285 (1911); see also Simpson v. State, 17 S.E. 984, 986 (Ga. 1893) (noting that it is "beyond question

---

[3] That statute provides that "[a] person commits the offense of harassing communications if such person . . . [c]ontacts another person repeatedly via telecommunication, e-mail, text messaging, or any other form of electronic communication for the purpose of harassing, molesting, threatening, or intimidating such person or the family of such person." O.C.G.A. § 16-11-39.1(a)(1). Everett does not dispute that her conduct fell within the text of the statute and only argues that its application in this case violates the First Amendment.

9

that a criminal act begun in one stated and completed in another renders the person who does the act liable to indictment in the latter"). And the record is undisputed that Hopkins and his supervisors at the police department requested Everett's extradition from Alabama through the appropriate, established channels between the states, suggesting that no one along the way thought Everett's arrest violated clearly established law. In sum, Everett has simply offered us no grounds to conclude that the district court erred in granting summary judgment to Detective Hopkins on qualified immunity grounds.

As for Everett's claim against Cobb County and Detective Hopkins (in his official capacity) for the violations of her First and Fourth Amendment rights by one of the entity's employees, she must show that the violations were committed pursuant to a government custom or policy. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998); see also Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). The plaintiff may demonstrate this kind of custom or policy by pointing to either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003).

Unable to point to an official policy of the Cobb County Police Department to arrest people for engaging in First Amendment protected expression or without probable cause, Everett claims that the department inadequately trains officers to

distinguish speech protected by the First Amendment from that which is not.  But she has not alleged -- much less identified in discovery -- a pattern of violations of the First Amendment or the Fourth Amendment in Clayton County and this dooms her claim of municipal liability.  See Connick v. Thompson, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). Because Everett has raised no genuine disputes of material fact concerning any unconstitutional patterns or policies of Cobb County, the district court did not err in granting summary judgment to the County and Detective Hopkins on these claims.

Nor did the district court err in dismissing the case against Miller, because Everett has not alleged sufficient facts to render plausible the claim that Miller conspired with Hopkins to violate her First and Fourth Amendment rights.  Section 1983 can provide a remedy against a private person, but only where "that person is shown to have conspired with one or more state actors."  Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1285 (11th Cir. 2002).  Making this claim requires the allegation of sufficient facts from which an "'understanding' and 'willful participation' between private and state defendants" can be inferred.  Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir. 1990).

Everett has not alleged facts of this sort.  She simply alleges that Miller took the emails to the police and was not entirely forthcoming about the context of

11

Everett's harassment.  Specifically, Everett alleges that Miller denied that the affair had taken place and did not disclose that she and Everett had spoken over the phone before Everett's campaign began in earnest.  But neither of these facts are pertinent to Hopkins's decision to pursue remedies for the harassment.  As Hopkins attested, whether the affair in fact occurred had no relevance to his decision to arrest Everett for online harassment -- in other words, an understandable reason to be mad at someone is not a legal excuse to harass them.  The initial phone call in January similarly does not undercut Miller's allegation that she was harassed in any way, since it was actually part of Everett's harassment.  Thus, based on the allegations in the complaint, we cannot conclude that the district court erred in dismissing Everett's claims against Miller.

Finally, the district court did not err in rejecting Everett's constellation of subsidiary and state law claims.  Among other things, Detective Hopkins and Cobb County are entitled to official and sovereign immunity under Georgia law for reasons similar to the federal qualified immunity analysis.  See Merrow v. Hawkins, 467 S.E.2d 336, 337 (Ga. 1996) (official immunity applies to government officials unless the plaintiff can show a defendant acted with "actual malice"); Gilbert v. Richardson, 452 S.E.2d 476, 478 & n.4 (Ga. 1994) (local governments and their officials are shielded from suit by sovereign immunity unless that immunity has been waived).

12

Everett has made no argument that the immunity analysis would differ under state law in this case. We affirm the district court's decision in its entirety.[4]

    **AFFIRMED.**

---

[4] In addition, because Everett's motion to supplement the record contains materials that were not before the district court and are duplicative of the information already in the record, we DENY the motion.