[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11566
Non-Argument Calendar
_____

D.C. Docket No. 3:17-cv-00933-MMH-JBT

CHRISTOPHER D. DYAL,

Plaintiff - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, et al.,

Defendants,

MR. PINKSTON,
MR. CARTER,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 5, 2021)

Before WILSON, ROSENBAUM, and EDMONDSON, Circuit Judges.


PER CURIAM:


Plaintiff Christopher Dyal, proceeding pro se,[1] appeals the district court's grant of summary judgment in favor of Defendants Patrick Carter and Truman Pinkston in Plaintiff's civil action, filed pursuant to 42 U.S.C. § 1983. Plaintiff contends Defendants were deliberately indifferent to a substantial risk of serious harm posed by tasks Plaintiff was assigned to perform while he was a prisoner at Florida State Prison ("FSP"). No reversible error has been shown; we affirm.

This appeal arises out of these facts, viewed in the light most favorable to Plaintiff. Between May and June 2016, Plaintiff was assigned to work at the FSP Water Treatment Plant where he was supervised by Defendants. Each day, between 300 to 400 thousand gallons of wastewater flowed through a water tank at the Water Treatment Plant before being treated and supplied to FSP. The water tank was equipped with a screen designed to filter trash and debris out of the wastewater. Under normal circumstances, a machine raked the trash from the screen and deposited the trash into a dumpster. When the machine was out of

---

[1] We construe liberally pro se pleadings. See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

2

order, however, the screen required cleaning by hand.  During these times, the screen would be cleaned manually 8 to 10 times a day.

Plaintiff says Defendants forced him "against his will" to clean manually the water tank's screen.  This task involved walking down a set of 16 steps into a large tank, raking trash from the screen, shoveling the trash into a bucket, carrying the bucket back up the steps, and emptying the bucket into a nearby dumpster.  While working at the Water Treatment Plant, Plaintiff cleaned the screen two to three times a day.  Defendants provided Plaintiff with rubber gloves and rubber boots and denied Plaintiff's requests for additional personal protective equipment.[2]

On or about 18 May 2016, Plaintiff started developing sores on parts of his body that had been exposed to the wastewater, including on his face, arms, chest,

---

[2] Plaintiff contends the screen-cleaning task required additional personal protective equipment. Plaintiff relies chiefly on a document -- "Florida Department of Corrections Housekeeping Procedures Involving Potential Exposure to Blood and Body Fluids Lesson Plan" ("Housekeeping Procedures") -- instructing inmates assigned to housekeeping duties on the proper method of cleaning "visible spills of blood o[r] other body fluids during the course of normal housekeeping operations."  Nothing evidences that the Housekeeping Procedures are applicable to inmates assigned to work outside the perimeter of the prison at the Wastewater Treatment Plant.  Nor has Plaintiff introduced evidence that blood or other body fluids were visible in the wastewater or near the water tank's screen.  Also, even to the extent the Housekeeping Procedures might be applicable to inmates working at the Wastewater Treatment Plant, the violation of a prison policy -- by itself -- establishes no constitutional violation.  Cf. Sandin v. Conner, 515 U.S. 472, 481-82 (1995) (prison regulations are not intended to confer rights or benefits on inmates but are designed to guide correctional officials in the administration of prisons).

and neck.  When Plaintiff reported his injuries to Defendants, Defendants told Plaintiff to go to the medical staff.

Prison medical staff treated Plaintiff's sores and tested him for potential viral infections.  Never has Plaintiff alleged that he received inadequate medical care at FSP.  Plaintiff was transferred to a different institution on 8 June 2016 where he continued to receive medical care for his sores.  Plaintiff suffered from sores for at least two years; some of the sores have left permanent scars.

Plaintiff testified that he knew both Pinkston and Carter from his two prior incarcerations and that he was well-liked by Defendants.  When Defendants learned Plaintiff was back in prison, Plaintiff says Defendants were "upset" and that Pinkston told Plaintiff that Pinkston was "going to break him."  Plaintiff testified that Defendants wanted to teach him a lesson to help Plaintiff so he would avoid ending up back in prison.

Plaintiff filed this civil action against Defendants, alleging he had been subjected to cruel and unusual punishment in violation of the Eighth Amendment.[3] The district court granted summary judgment in favor of Defendants.

---

[3] Plaintiff also asserted he was denied due process and equal protection in violation of the Fifth and Fourteenth Amendments.  In his appellate brief, Plaintiff mentions the Fourteenth Amendment only as a vehicle for his deliberate indifference claim.  Plaintiff raises no argument in his brief about due process or equal protection; these claims are thus not before us on appeal.

4

We review a district court's grant of summary judgment de novo. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999). We view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Id. Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Ave. Clo Fund, LTD v. Sumitomo Mitsui Banking Corp., 723 F.3d 1287, 1294 (11th Cir. 2013). Although a court must draw all reasonable inferences in favor of the non-moving party, "an inference based on speculation and conjecture is not reasonable." Id.

The Eighth Amendment -- as applied to the states through the Fourteenth Amendment -- prohibits the infliction of "cruel and unusual punishments." See U.S. Const. amend. VIII. To prevail on an Eighth Amendment claim based on prison officials' failure to prevent harm, an inmate must show three things: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Brooks v. Powell, 800 F.3d 1295, 1301 (11th Cir. 2015).

We evaluate the substantial-risk-of-serious-harm element under an objective standard. Id. To establish a substantial risk of serious harm, an inmate must show

5

a "strong likelihood of injury, rather than a mere possibility." Id. (quotations omitted). That a prisoner was, in fact, injured -- by itself -- is insufficient to show a substantial risk of serious harm. Id. at 1302.

Plaintiff has shown no objectively substantial risk of serious harm. The evidence shows that -- during the pertinent time -- the machine that cleaned the water tank's screen was non-operational. Under those circumstances, for the water tank's screen to be cleaned manually several times a day was necessary and routine. Other inmates besides Plaintiff had performed this task on many occasions, including at least one other inmate that was assigned to the task at the same time as Plaintiff. Nothing evidences that another inmate had developed sores or suffered other injury after cleaning the screen by hand. In written declarations, each Defendant also attested that Defendants had performed personally the complained-of task on many occasions -- using the same protective gear (rubber gloves and rubber boots) provided to Plaintiff -- and had suffered no injury.

Viewing this evidence in Plaintiff's favor, Plaintiff has shown no "strong likelihood" of injury. That Plaintiff was injured after his exposure to the wastewater -- or that a mere possibility of injury existed -- is not enough to establish an objectively substantial risk of serious harm.

6

Moreover, even if Plaintiff could show a substantial risk of serious harm, his proposed facts are insufficient to establish deliberate indifference under the second part of our Eighth Amendment inquiry. To establish deliberate indifference, Plaintiff must show that Defendants knew of and disregarded "an excessive risk to inmate health or safety." See Purcell ex. rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1319-20 (11th Cir. 2005). To satisfy this element, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and must also draw the inference." Id. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is no infliction of cruel and unusual punishment under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Each Defendant has sworn -- and nothing refutes -- that Defendants were unaware of any injury caused by manual cleaning of the water tank screen. That each Defendant himself performed the screen-cleaning task on multiple occasions and with the same equipment provided to Plaintiff also renders a finding that Defendants knew the task was likely to cause an injury unsupported. No reasonable inference can be made that Defendants had subjective knowledge of a substantial risk of serious injury.

7

Viewed in the light most favorable to Plaintiff, Plaintiff has shown no Eighth Amendment violation.[4] We affirm the district court's grant of summary judgment in favor of Defendants.

AFFIRMED.

---

[4] Given our conclusion that the facts show no Eighth Amendment violation, we also conclude that Defendants -- under the circumstances -- violated no already clearly established right. So even if we are mistaken about whether the facts might show an Eighth Amendment violation, Defendants would be entitled to qualified immunity from Plaintiff's damage claims.